Scott K. Canepa, Nev. Bar #4556
Terry W. Riedy, Nev. Bar #3895
Bryan T. Abele, Nev. Bar #7250
CANEPA RIEDY ABELE & COSTELLO
851 South Rampart Boulevard, Suite 160
Las Vegas, Nevada 89145-4885
Telephone:  (702) 304-2335
Facsimile:  (702) 304-2336
scanepa@canepariedy.com
triedy@canepariedy.com
babele@canepariedy.com

J. Randall Jones, Nev. Bar #1927
Michael J. Gayan, Nev. Bar #11135

KEMP, JONES & COULTHARD, LLP
3800 Howard Hughes Parkway, 17th Floor
Las Vegas, Nevada 89169
Phone:  (702) 385-6000
Fax:      (702) 385-6001
r.jones@kempjones.com
m.gayan@kempjones.com

*Attorneys for Plaintiff*

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEVADA

| | |
|---|---|
| The SEASONS HOMEOWNERS ASSOCIATION, INC., a Nevada nonprofit corporation; and DOE HOMEOWNERS 1 through 1000,<br><br>　　　　　　　Plaintiffs,<br><br>　　vs.<br><br>RICHMOND HOMES OF NEVADA, INC., a foreign corporation doing business in Nevada; RED ROCK MECHANICAL, LLC, a Nevada company; ASPEN MANUFACTURING HOLDINGS, INC. fka ASPEN MANUFACTURING, INC., a foreign corporation doing business in Nevada; DOE INDIVIDUALS 1-200; and ROE BUSINESS or GOVERNMENTAL ENTITIES 1-200,<br><br>　　　　　　　Defendants. | Case No.  2:16-cv-01816-JCM-CWH<br><br><br>**STIPULATION AND ORDER TO DISMISS** |

1    _____    )
                                             )
2    AND ALL RELATED CLAIMS.                 )
     _____    )
3

4         WHEREAS, on July 30, 2016, Defendant Aspen Manufacturing Holding, Inc. fka

5    Aspen Manufacturing, Inc. ("Aspen") filed its Petition for Removal to the United States

6    District Court for the District of Nevada, which was joined by Defendant Richmond

7    American Homes of Nevada, Inc. ("Richmond American") and Third-Party Defendant Red

8    Rock Mechanical, LLC ("Red Rock") on August 15, 2016;

9         WHEREAS, on August 29, 2016, Plaintiff The Seasons Homeowners Association,

10   Inc. ("Seasons" or "Plaintiff") filed its Motion to Remand (Doc. No. 17);

11        WHEREAS, on December 7, 2016, this Court entered its order denying Plaintiff's

12   Motion to Remand (Doc. No. 27);

13        WHEREAS, in or about May 2017, Plaintiff entered into a settlement agreement

14   with Richmond American, Red Rock, and Third-Party Defendant NSI Supply, Inc. ("NSI")

15   requiring payment of $2,000,000 to resolve Plaintiff's claims against these settling parties

16   ("Initial Settlement"), which is contingent upon (1) this Court finding the Initial Settlement

17   to have been reached in good faith as contemplated by NRS 17.245; (2) dismissal of

18   Aspen's claims against Richmond American, Red Rock, and NSI; and (3) entry of an order

19   barring future claims by the individual homeowners in the Seasons development;

20        WHEREAS, prior to removal of this action, NSI filed a cross-claim against, among

21   others, Aspen and Red Rock for implied indemnity, contribution, declaratory relief, and

22   apportionment;

23        WHEREAS, prior to removal of this action, NSI filed third-party complaint against,

24   among others, Aspen, Red Rock and several of Aspen's insurers for breach of contract

2

based on certain additional insured obligations;

WHEREAS, the Initial Settlement has no connection with or impact on NSI's third-party claims against Aspen's insurers only;

WHEREAS, on June 28, 2017, Richmond American, Red Rock, and NSI filed their Joint Motion for Determination of Good Faith Settlement (Doc. No. 42), which seeks (1) a judicial finding the Initial Settlement to have been reached in good faith pursuant to NRS 17.245; (2) dismissal of Aspen's claims against Richmond American, Red Rock, and NSI; and (3) an order barring all current and/or future claims for contribution and equitable or implied indemnity as against Richmond American, Red Rock, and NSI ("Joint Motion");

WHEREAS, on June 28, 2017, Plaintiff, Richmond American, Red Rock, and NSI filed a Stipulation and Order Barring Settled Claims Involving Separate Interest Property (Doc. No. 43) ("Stipulation Barring Claims");

WHEREAS, on June 29, 2017, Red Rock filed its Motion to Deem Settlement Agreement Signed (Doc. No. 44) and an Errata thereto (Doc. No. 45) ("Motion to Deem");

WHEREAS, on July 17, 2017, Richmond American filed its Notice of Non-Opposition related to the Joint Motion (Doc. No. 48);

WHEREAS, on July 20, 2017, Red Rock filed its Notice of Non-Opposition related to the Motion to Deem (Doc. No. 49);

WHEREAS, in or about July 2017, Plaintiff entered into a settlement agreement with Aspen requiring payment of $500,000 to resolve Plaintiff's claims against Aspen ("Aspen Settlement"), which is contingent upon (1) this Court finding the Aspen Settlement to have been reached in good faith as contemplated by NRS 17.245; (2) a similar good-faith finding of a settlement reached in a related matter styled as *Skypointe Unit Owners' Association v. Aspen Manufacturing Holdings, Inc. fka Aspen Manufacturing,*

3

*Inc.*, Case No. A-14-706889-D, which is pending in Department 30 of the Eighth Judicial District Court of the State of Nevada; and (3) final court approval, pursuant to NRCP 23(e), of a class action settlement in a related matter styled as *In re: Aspen Series BB Evaporator Coil Litigation*, Case No. A-14-710463-D, which is pending in Department 16 of the Eighth Judicial District Court of the State of Nevada;

WHEREAS, on September 22, 2017, Aspen filed its Motion for Determination of Good Faith Settlement (Doc. No. 52), which seeks (1) a judicial finding the Aspen Settlement to have been reached in good faith pursuant to NRS 17.245; and (2) an order barring all current and/or future claims for contribution and equitable or implied indemnity as against Aspen ("Aspen Motion");

WHEREAS, on September 26, 2017, Richmond American filed its Limited Opposition to the Aspen Motion (Doc. No. 53), which does not oppose the substance of the Aspen Motion and requests entry of orders granting the Joint Motion, the Stipulation Barring Claims, and the Motion to Deem in conjunction with an order granting the Aspen Motion;

WHEREAS, at a hearing on October 9, 2017, the Honorable Jerry Wiese granted Aspen's motion seeking a good-faith finding pursuant to NRS 17.245 related to the settlement reached in the matter styled as *Skypointe Unit Owners' Association v. Aspen Manufacturing Holdings, Inc. fka Aspen Manufacturing, Inc.*, Case No. A-14-706889-D, and a copy of the order is attached hereto as **Exhibit 1**;

WHEREAS, at a final fairness hearing on November 1, 2017, the Honorable Timothy Williams granted final approval of the class action settlement reached in the matter styled as *In re: Aspen Series BB Evaporator Coil Litigation*, Case No. A-14-710463-D, and a copy of the order is attached hereto as **Exhibit 2**;

4

WHEREAS, Richmond American, Red Rock, NSI, and Aspen have not yet tendered their respective settlement payments to Plaintiff;

WHEREAS, Richmond American, Red Rock, and NSI and/or their insurers will fund their respective shares of the settlement with Plaintiff only after this Court enters orders granting the pending motions (Doc. Nos. 42–44);

WHEREAS, the settling parties having obtained the foregoing orders in the *In re: Aspen* and *Skypointe* matters, Aspen and/or its insurers will fund the settlement reached with Plaintiff in this matter only after entry of orders granting its pending motion in this *Seasons* action (Doc. No. 52); and

WHEREAS, NSI has resolved its cross-claims and third-party claims against all parties.

NOW, THEREFORE, upon consent of the parties:

IT IS HEREBY STIPULATED AND AGREED, this 18th day of December 2017,

1.  The Court may grant the Joint Motion (Doc. No. 42), the Stipulation Barring Claims (Doc. No. 43), the Motion to Deem (Doc. No. 44), and the Aspen Motion (Doc. No. 52);

2.  Upon entry of orders granting the foregoing motions and stipulation (Doc. Nos. 42–44, 52), all claims asserted in this action, including, but not limited to, NSI's cross-claims and third-party claims against Aspen, Red Rock, and Aspen's insurers, as alleged in NSI's Third Party Complaint—shall be dismissed with prejudice with each party to bear its own attorney's fees and costs; and

/ / /

/ / /

3.      The Court shall retain jurisdiction over the settling parties to enforce the Initial Settlement and the Aspen Settlement, including but not limited to the payment obligations.

Respectfully Submitted by:

DATED this 18th day of December, 2017.

KEMP, JONES & COULTHARD, LLP

DATED this 18th day of December, 2017.

WOOD, SMITH, HENNING & BERMAN, LLP

/s/ Michael Gayan

J. Randall Jones, Esq. (#1927)
Michael J. Gayan, Esq. (#11135)
3800 Howard Hughes Parkway, 17th Fl.
Las Vegas, Nevada 89169

Scott K. Canepa, Esq. (#4556)
Terry W. Riedy, Esq. (#3895)
Bryan T. Abele, Esq. (#7250)
CANEPA RIEDY ABELE
851 South Rampart Boulevard, Suite 160
Las Vegas, Nevada 89145-4885

Attorneys for Plaintiff The Seasons
Homeowners Association, Inc.

s/ Janice Michaels

Janice M. Michaels, Esq. (#6062)
Cassidy R. Ellis, Esq. (#13116)
7674 West Lake Mead Boulevard, Suite 150
Las Vegas, Nevada 89128-6644

Attorneys for Defendant
Richmond American Homes of
Nevada, Inc.

DATED this 18th day of December, 2017.

THORNDAL ARMSTRONG DELK
BALKENBUSH & EISINGER

/s/ Philip Goodhart

Christopher J. Curtis, Esq. (#4098)
Philip Goodhart, Esq. (#5332)
Sean D. Cooney, Esq. (#12945)
1100 East Bridger Avenue
Las Vegas, Nevada 89101-5315

Attorneys for Defendant Aspen Manufacturing
Holdings, Inc. fka Aspen Manufacturing, Inc.

DATED this 18th day of December, 2017.

CISNEROS & MARIAS

/s/ Kenneth Marias

Kenneth M. Marias, Esq. (#5062)
1160 North Town Center Drive, Suite 130
Las Vegas, Nevada 89144

Attorney for Third-Party
Defendant Red Rock Mechanical,
LLC

6

DATED this 18th day of December, 2017.

HERNQUIST & ASSOCIATES

*/s/ William Hernquist*
William C. Hernquist II, Esq.
8407 La Mesa Blvd.
La Mesa, CA 91942-5305

*Attorney for Third-Party Defendant NSI*
*Supply, Inc.*

                              *    *    *

       Based upon the foregoing stipulation, all claims asserted in this action are hereby

DISMISSED WITH PREJUDICE with each party to bear its own attorney's fees and

costs.
       DATED December 22, 2017.

                                        _____
                                        UNITED STATES DISTRICT JUDGE

7

# EXHIBIT 1

Electronically Filed
11/13/2017 10:23 AM
Steven D. Grierson
CLERK OF THE COURT

**ORD**
PHILIP GOODHART, ESQ.
Nevada Bar No. 5332
SEAN D. COONEY, ESQ.
Nevada Bar No. 12945
THORNDAL ARMSTRONG DELK
BALKENBUSH & EISINGER
1100 East Bridger Avenue
Las Vegas, NV 89101-5315
  Mail To:
  P.O. Box 2070
  Las Vegas, NV 89125-2070
Tel.: (702) 366-0622
Fax: (702) 366-0327
png@thorndal.com
sdc@thorndal.com
Attorneys for Defendant, ASPEN
MANUFACTURING HOLDINGS, INC.
fka ASPEN MANUFACTURING, INC.

## DISTRICT COURT

## CLARK COUNTY, NEVADA

| | |
|---|---|
| SKYPOINTE UNIT OWNERS' ASSOCIATION, a Nevada nonprofit corporation; and DOE HOMEOWNERS 1 through 1000,<br><br>        Plaintiffs,<br><br>vs.<br><br>ASPEN MANUFACTURING HOLDINGS, INC. fka ASPEN MANUFACTURING, INC., a foreign corporation doing business in Nevada; and DOE INDIVIDUALS 1-200; and ROE BUSINESS or GOVERNMENTAL ENTITIES 1-200,<br><br>        Defendants. | CASE NO.  A-14-706889-D<br>DEPT. NO. 30<br><br><br>[ELECTRONIC FILING CASE]<br><br><br>**ORDER GRANTING ASPEN MANUFACTURING HOLDINGS, INC. FKA ASPEN MANUFACTURING, INC.'S MOTION FOR DETERMINATION OF GOOD FAITH SETTLEMENT** |

This Motion came up for hearing on October 9, 2017. Counsel for Aspen and plaintiffs were present. The Court reviewed Aspen's Motion for Determination of Good Faith Settlement along with the relevant pleadings, considered the factors set forth in *In re MGM Grand Hotel Fire Litigation*, 570 F.Supp. 913 (D. Nev 1983) and *Vesicol Chemical v. Davidson*, 107 Nev. 356 (1991), the fact there was no opposition to Aspen's motion, and ruled as follows:

1    IT IS HEREBY OREDERED that Aspen's Motion for Determination of Good Faith

2  Settlement is GRANTED;

3    IT IS FURTHER ORDERED that Aspen's liability for contribution and equitable

4  indemnity and any claim derivative thereof are hereby discharged pursuant to NRS section

5  17.245(b).

6    DATED: 2 Nov 2017

7

8  IT IS SO ORDERED.

9

10

11                                    _____

12                                    Honorable Judge Jerry A. Wiese

13

14

15  Respectfully submitted by:

16

17  PHILIP GOODHART, ESQ.
   Nevada Bar No. 5332
18  SEAN D. COONEY, ESQ.
   Nevada Bar No. 12945
19  THORNDAL, ARMSTRONG, DELK
   BALKENBUSH & EISINGER
20  1100 East Bridger Avenue
   Las Vegas, Nevada  89101
21  Attorneys for Defendant/Cross-Defendant,
   ASPEN MANUFACTURING HOLDINGS,
22  INC. fka ASPEN MANUFACTURING, INC.

23

24

25

26

27

28

-2-

# EXHIBIT 2

Electronically Filed
11/1/2017 2:43 PM
Steven D. Grierson
CLERK OF THE COURT

1  Scott K. Canepa, Esq. (#4556)
    Terry W. Riedy, Esq. (#3895)

2  Bryan T. Abele, Esq. (#7250)
    CANEPA RIEDY ABELE

3  851 South Rampart Boulevard, Suite 160
    Las Vegas, Nevada 89145-4885

4  T: (702) 304-2335
    F: (702) 304-2336

5  scanepa@canepariedy.com

6  J. Randall Jones, Esq. (#1927)
    Michael J. Gayan, Esq. (#11135)

7  Nathanael R. Rulis, Esq. (#11259)
    KEMP, JONES & COULTHARD, LLP

8  3800 Howard Hughes Parkway, 17th Floor
    Las Vegas, Nevada 89169

9  T: (702) 385-6000
    F: (702) 385-6001

10  mjg@kempjones.com

11  *Class Counsel*

12           **DISTRICT COURT**

13        **CLARK COUNTY, NEVADA**

14  IN RE: ASPEN SERIES BB EVAPORATOR   Case No.: A-14-710463-D
    COIL LITIGATION                Dept. No. XVI

15

16                       **Order Granting (1) Joint Motion for Final Approval of Settlement and Related Relief and**

17                       **(2) Class Plaintiffs' Motion for Final Approval of Attorney's Fee Award, Cost Reimbursement, and Class Representative Service Awards**

18

19                       Hearing Date:  November 1, 2017
                              Hearing Time:  10:00 a.m.

20

21      THESE MATTERS having come before the Court on November 1, 2017, with Class Plaintiffs

22  and Defendant Aspen Manufacturing Holdings, Inc. fka Aspen Manufacturing, Inc. ("Aspen")

23  appearing through their respective counsel of record on the parties' Joint Motion for Final Approval of

24  Settlement and Related Matters ("Joint Motion") and on Class Plaintiffs' Motion for Final Approval of

25  Attorney's Fee Award, Cost Reimbursement, and Class Representative Service Awards ("Motion for

1   Fees and Costs"). The Court having reviewed and considered the moving papers and any responses

2   thereto, and having heard the arguments of counsel, with good cause appearing for the reasons stated

3   on the record and there being no just reason for delay, enters the following findings of fact,

4   conclusions of law, and order:

5                                 **I.**

6             **FINDINGS OF FACT AND CONCLUSIONS OF LAW**

7   **A.**    **A Brief History of this Action.**

8   1.     On December 1, 2014, Class Plaintiffs filed this class action against Aspen for all owners of

9   homes in Nevada containing the Series BB evaporator coil units. In March 2015, Class Plaintiffs

10   moved to certify the proposed class action. On May 21, 2015, this Court entered its order certifying

11   this case as a statewide class action for all owners of homes containing Aspen Series BB units. This

12   case was subsequently consolidated with two related matters[1] for discovery purposes only. After

13   providing notice to the class members, Class Counsel received two opt-outs.[2]

14   2.     The parties engaged in significant litigation and discovery efforts in this action and the related

15   matters that were consolidated for discovery purposes—the *Seasons* and *Turner* matters—both of

16   which had trial dates before this action. The litigation and discovery performed by Class Counsel

17   during the coordinated efforts included but were not limited to the following: (a) prepared and filed

18   numerous pleadings and other papers, including a successful motion for class certification; (b)

19   prepared and served numerous sets of written discovery, reviewed the production of Aspen's records

20   related to the Series BB units and other records by both parties, issued subpoenas to non-parties (e.g.,

21   Pulte and others) to gather relevant records, and made unsuccessful attempts at obtaining records from

22   other non-parties due to dissolution or other factors; (c) coordinated, scheduled, and conducted more

23

24   [1] The *Seasons* case (Case No. A-13-676550-D) and the *Stanton* case (Case No. A-13-689790-D).

25   [2] All owners of homes involved in the related *Seasons* and *Stanton* cases opted out and continued to pursue their separate actions.

than 275 inspections of potential class members' homes, had Class Plaintiffs' experts attend those inspections and photograph the relevant conditions, and collected samples from each class home for potential laboratory testing; (d) coordinated with a third-party laboratory to test more than 185 samples taken from the class homes; (e) retained a team of seven experts to review the evidence and provide opinions on all factual areas relevant to the class claims (e.g., HVAC contracting, mechanical engineering, materials and design engineering, industrial hygienist, warnings and consumer expectations, statistician), including preparation of reports, providing expert testimony at deposition, and preparing to provide trial testimony; and (f) reviewed the reports published by Aspen's team of experts and deposed those experts.

**The Parties' Settlement Efforts and the Settlement.**

3.     After a mediation presided over by Jim Roberts, extensive settlement negotiations, and two mandatory settlement conferences presided over by the Honorable Jerry Wiese, Class Plaintiffs reached a global settlement agreement with Defendant Aspen ("Settling Defendant") to resolve all claims pending in this action.

4.     The essential terms of the settlement are generally set forth as follows: (a) the settling parties agreed to slightly modify the class definition to include all owners of Nevada homes that contain or contained Aspen Series BB evaporator coil units except those owners that opted out or separately resolved, assigned, or released their claims against Aspen; (b) Aspen and/or its insurers will pay $45,000,000 to Class Plaintiffs to settle all claims related to the Class Homes; (c) Aspen and/or its insurers will pay the settlement amount within approximately 30 days of this Court's order granting final approval of the Settlement; (d) in exchange for this payment, Class Plaintiffs and Aspen will mutually release each other for all claims related to the Aspen Series BB evaporator coil units installed in the Class Homes; (e) Aspen disclaims any right or obligation to direct, control, or comment on how the settlement funds are used; (f) all class notice costs and claims administration fees will be paid from

the settlement fund; [3] (g) Aspen, Class Counsel, and the class representatives agree not to disparage each other; and (h) the enforceability of the Settlement is expressly conditioned upon this Court's full and independent approval pursuant to NRCP 23(e).

**B.     The Preliminary Fairness Determination.**

5.     On August 4, 2017, the parties filed the Joint Motion seeking this Court's preliminary approval of the settlement. On August 8, 2017, the parties filed an Errata to the Joint Motion, which provided, among other things, minor modifications to the settlement agreement. The Court received no opposition to the Joint Motion before the preliminary approval hearing.

6.     The Court conducted a preliminary approval hearing with respect to the settlement on August 9, 2017, found the settlement terms (including the requested award of attorney's fees and costs) to be fair and reasonable, certified a slightly modified class definition for settlement purposes, approved the form of the Notice of settlement, directed service of the Notice by mail and publication, and set the time and date for the Final Fairness Hearing. The Preliminary Approval Order was entered on August 28, 2017.

7.     On or before the appointed deadline, the court-appointed notice administrator, Total Class Solutions, LLC ("TCS"), caused the Notice to be sent by Standard U.S. Mail to the property addresses for all homes located in developments with at least one confirmed class home (totaling 36,403 pieces), as well as by First Class Mail to the alternate mailing addresses for those homes on file with the Clark County Assessor's office (totaling 12,076 pieces). TCS made efforts to forward any returned Notices, where possible. TCS also caused an abbreviated, one-page notice to be sent by First Class Mail to all readily identifiable HVAC service companies and Nevada home inspectors (totaling more than 1,100 pieces). As required by the preliminary approval order, TCS caused the Notice to be published in the

---

[3] Due to unusual circumstances, Class Counsel agreed to pay the costs associated with the settlement notice under the terms and conditions described in the Agreement, which require reimbursement from the settlement fund.

1   Nevada Press Association's participating network of newspapers[4] as well as the El Mundo newspaper

2   (in Spanish) once per week for eight consecutive weeks starting on September 3, 2017. TCS also

3   caused the Notice to be published through digital impressions on the websites maintained by the Las

4   Vegas Review-Journal (in English), the El Mundo (in Spanish), the Nevada Appeal (in English), the El

5   Sol de Nevada (in Spanish, and the Reno Gazette-Journal (in English) for a period of six weeks

6   beginning during the week of September 3, 2017. Finally, TCS caused the Notice to be published via a

7   Digital Marketing Campaign (social media ad campaign and digital targeted ads) for a six-week period

8   or when the budgeted funds were exhausted, whichever came first, beginning the week of September

9   3, 2017 (resulting in more than 3,000 click-throughs).

10   8.      On October 26, 2017, Class Plaintiffs filed a Notice of (1) Completion of the Court-Ordered

11   Class Notice Program and (2) Class Member Responses to the Class Notice. This notice certified

12   completion of the court-ordered notice program and identified the class members' responses, which

13   included three (3) objections and one (1) letter supporting the settlement. Later that same day, Class

14   Plaintiffs filed a response to the class member objections.

15   **C.      The Final Approval Hearing.**

16   9.      Other than the three class member objections, the Court received no opposition to the Joint

17   Motion or the Motion for Fees and Costs before the final fairness hearing.

18   10.     On November 1, 2017, this Court held the final fairness hearing related to the settlement in

19   accordance and compliance with NRCP 23(e).

20

21   _____

22   [4] The participating daily newspapers include the Las Vegas Review-Journal, the Las Vegas Sun, the
     Reno Gazette-Journal, the Nevada Appeal (Carson City), and the Elko Daily Free Press. The

23   participating non-daily newspapers include Battle Mountain Bulge, Ely Times, Eureka Sentinel, The
     Humboldt Sun (Winnemucca), Lahontan Valley News (Fallon), Lincoln County Record (Caliente),

24   Lovelock Review-Miner, Mineral County Independent-News (Hawthorne), North Lake Tahoe
     Bonanza (Incline Village), Pahrump Valley Times, The Record-Courier (Gardnerville), Sierra Sun

25   (Truckee, CA), Sparks Tribune, Tahoe Daily Tribune (South Lake Tahoe), Wells Progress, and
     Wendover Times.

1    11.    Class Counsel offered a presentation outlining, *inter alia*, the settlement terms and the notice

2    provided to the class members. The Court received no opposition to the request for final approval of

3    the settlement. Three class members sent Class Counsel written objections to the settlement, and Class

4    Counsel did not receive any requests to appear at the final fairness hearing.

5    12.    Counsel for the Settling Defendant and all others present at the hearing were offered the

6    opportunity to present argument and voice objections, and no party or Class Member offered any

7    opposition or objection to the Court's final approval of the settlement.

8    13.    The Court finds that the distribution of the Notice as provided for in the Preliminary Approval

9    Order constitutes the best notice practicable under the circumstances to all persons impacted by the

10    settlement and fully meets the requirements of due process under the Nevada Rules of Civil Procedure.

11    Prior to sending out the Notice, Class Counsel obtained the approval of this Court to the general form

12    of the Notice, and the specific form of the Notice was provided to the Settling Defendant's counsel for

13    review and comment prior to the distribution and publication of the Notice. Additionally, class

14    members were provided abundant information with which to evaluate the settlement. The Notice was

15    more than adequate to advise class members regarding the settlement, and not one party or person

16    appearing at the Final Fairness Hearing filed or voiced a single objection about the form of the Notice.

17    **D.    The Settlement is Fundamentally Fair, Adequate, and Reasonable.**

18    14.    Nevada Rule of Civil Procedure 23(e) provides that a class action "shall not be dismissed or

19    compromised without the approval of the court." NEV. R. CIV. P. 23(e). In approving a settlement, the

20    court must determine whether, taken as a whole, the settlement is "fundamentally fair, adequate, and

21    reasonable." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998); *see also Class Plaintiffs*

22    *v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992). In determining whether a class action

23    settlement should be finally approved and deemed fair and reasonable, the Court's discretion should be

24    guided by the following factors: (1) the strength of the plaintiffs' case; (2) the risk, expense,

25    complexity, and likely duration of further litigation; (3) the risk of maintaining class action status

throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of class members to the proposed settlement. *See Churchill Village, LLC v. Gen. Elec.*, 361 F.3d 556, 575 (9th Cir. 2004). "This list is not exhaustive, and different factors may predominate in different factual contexts." *Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370, 1376 (9th Cir. 1993). In addition to these factors, courts may consider the procedure by which the parties arrived at the settlement to determine whether the settlement is truly the product of arm's length bargaining, rather than the product of collusion or fraud. *See Chun-Hoon v. McKee Foods Corp.*, 716 F. Supp. 2d 848, 851 (N.D. Cal. 2010).

15.    In considering whether a class action settlement is reasonable, the court must take into account the uncertainties and expense of trial and the difficulties in proving plaintiff's case. *See In re Mego Fin. Sec. Corp. v. Nadler*, 213 F.3d 454, 459 (9th Cir. 2000). "[T]he very essence of a settlement is compromise, 'a yielding of absolutes and an abandoning of highest hopes.'" *Officers for Justice v. Civil Service Comm'n of the City and County of San Francisco*, 688 F.2d 615, 624 (9th Cir. 1982) (quoting *Cotton v. Hinton*, 559 F.2d 1326, 1330 (5th Cir. 1977)). Whether a settlement "could have been better" is not the question for the court; instead, the proper inquiry is whether it is "fair, adequate and free from collusion." *Hanlon*, 150 F.3d at 1027; *see also Officers for Justice*, 688 F.2d at 625 ("The proposed settlement is not to be judged against a hypothetical or speculative measure of what might have been achieved by the negotiators.").

16.    Having considered all the relevant factors, the Court finds the settlement to be fair, adequate, and reasonable, and the Court fully and finally approves it pursuant to Nevada Rule of Civil Procedure 23(e).

17.    The settlement is unquestionably the result of arm's-length negotiations supervised by both a judicial officer and a separate, independent mediator. There is no evidence of collusion, and the

participation of a judicial officer, a professional mediator, and the involvement of multiple counsel from different firms further evidences a lack of collusion.

18.     The Settling Defendant has agreed to pay $45,000,000 for Class Counsel to hold in trust for the benefit of the class members.

19.     The settlement ensures that every Class Member has the ability to obtain substantial funds that can be put toward replacing the allegedly defective Aspen BB unit(s) installed in their homes. The evidence shows that the settlement amount represents a significant portion of the estimated cost to replace the allegedly defective Aspen BB units.

20.     Given the risks, expense, and delay attendant to continued litigation against the Settling Defendant, the settlement amount is well within the range of reasonableness and is fair, adequate, and reasonable.

21.     Risk and uncertainty in continued litigation are significant factors here. The Court must consider the strength and weaknesses of the Class Plaintiffs' case, the expense and complexity of proceeding through trial, and the likelihood of an appeal by the losing party. *See Churchill Village*, 361 F.3d at 576. The Court has supervised this case for more than three years and is familiar with the parties' underlying disputes. The litigation against Settling Defendant has been hotly contested, and any additional benefits that might be gained through trial therefore would likely be substantially diluted by the delay inherent in acquiring them.

22.     More importantly, the ability to be paid a full settlement payment now is far more valuable than the ability to pursue collection of a judgment in the future. Aspen's insurance carriers have at all times disputed any coverage for the class claims, resulting in multiple declaratory relief actions being filed to determine the extent, if any, of Aspen's available insurance coverage. The uncertainty surrounding Aspen's insurance coverage raised significant collectability concerns, as the judgment sought by the Class Plaintiffs could have forced Aspen into bankruptcy. Given the risks and delay attendant to continued litigation, the settlement is an exceptional result as it ensures that every one of

the class members an opportunity to obtain significant, quantifiable consideration in exchange for a release of their claims against the Settling Defendant.

23.     Experienced, competent, and well-informed class counsel recommended the settlement. During the past few years, Class Counsel has undertaken substantial investigation at great expense on behalf of the Class. Their discovery efforts included the production and review of thousands of pages of documents and tens of thousands of photographs, written discovery, non-party discovery, inspections of hundreds of class and non-class homes, retaining a team of seven experts, preparation and publication of expert reports, and depositions of percipient and expert witnesses.

24.     The timing of the settlement also weighs strongly in favor of approval. The settlement agreement was placed on the record more than three years after Class Plaintiffs filed the action, more than two years after class certification, after the close of discovery (which included extensive investigation and discovery by Class Counsel and all parties retaining experts), after the briefing of pretrial motions, and just days before trial. The parties completed all of this work before reaching the settlement, which provided each party with ample opportunity to investigate the claims and defenses. The facts in the case were well-developed and understood by all at the time the parties reached the settlement.

25.     The positive reaction of the class members also heavily weighs in favor of approval. The class representatives support the settlement. Notice of the settlement was served upon the class members via direct mailings and publications. The notice was mailed to more than 48,000 addresses and published in dozens of newspapers and electronic outlets. In response, Class Counsel received only three (3) written objections from the estimated 60,000 class members and did not receive any requests to appear at the final fairness hearing.

26.     The settlement allows the Class to avoid significant expenses associated with continued litigation against the Settling Defendant. Absent the settlement, significant trial time would be required (by the parties' estimates, approximately 2–4 months). The Court also considered and weighed the risk

that Class Plaintiffs could continue to invest in the lawsuit and lose at trial. Although Class Counsel has had tremendous success at trial in similar cases, the risks of a defense verdict and non-collection remain serious considerations. The settlement balances money in hand today versus the possibility of a loss at trial or the inability to collect on a favorable judgment. The Court also notes that the trial may be followed by significant, lengthy appeals. The settlement avoids all of the expense, delay, and risk associated with a lengthy jury trial and a time-consuming appeal process.

**E.    Attorney's Fee Award and Reimbursement of Litigation Costs to Class Counsel.**

27.    The Court also finds that Class Counsel, Canepa Riedy Abele ("CRA") and Kemp, Jones & Coulthard, LLP ("KJC"), are entitled to an award of attorney's fees totaling $15,750,000 and reimbursement of litigation costs totaling $745,397.36 from the settlement funds based upon the findings and conclusions below.

   *1.    Attorney's Fees.*

28.    The Nevada Supreme Court has adopted the common-fund doctrine and percentage-based fee approach because it requires the benefitting parties "to help pay for the expenses incurred in recovering [their] own money," and it "encourag[es] attorneys to undertake and diligently pursue cases such as this with the assurance of prompt and direct compensation." *State v. Elcano*, 106 Nev. 449, 794 P.2d 725, 726 (1990). Courts surveying the field have found the typical, percentage-based fee awards to fall within the range of 25 to 50 percent. *See, e.g., In re Combustion, Inc.*, 968 F. Supp. 1116, 1133 (W.D. La. 1997) (noting typical fees as one-third of the fund); *In re Rio Hair Naturalizer Products Liability Litig.*, 1996 WL 780512 at *16 (E.D. Mich. 1996) (noting common fund fee awards to range "from 20 to 50 percent of the fund"); *accord, Maywalt v. Parker & Parsley Petroleum Co.*, 963 F. Supp. 310, 313 (S.D. N.Y. 1997) (same). When determining fees in common-fund cases, "courts must do their best to award counsel the market price for legal services, in light of the risk of nonpayment and the normal rate of compensation in the market at the time." *In re Synthroid Marketing Litig.*, 264 F.3d 712, 718 (7th Cir. 2001) (collecting cases) (emphasis added).

29.     The settlement creates a common fund because it provides mathematically ascertainable benefits to the class members. *Elcano*, 794 P.2d at 726; *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980).

30.     Whatever approach is used for calculating the fee award from a common fund, the amount of the award must be reasonable. This Court looks to the factors enumerated by the Nevada Supreme Court in *Brunzell v. Golden Gate National Bank*, 85 Nev. 345, 455 P.2d 31, 33 (1969), as guidelines for that reasonableness determination. Those factors include: (a) the qualities of the advocate: his ability, his training, education, experience, professional standing and skill; (b) the character of the work to be done: its difficulty, its intricacy, its importance, time and skill required, the responsibility imposed and the prominence and character of the parties where they affect the importance of the litigation; (c) the work actually performed by the lawyer: the skill, time and attention given to the work; (d) the result: whether the attorney was successful and what benefits were derived. *Id.* The federal courts also typically consider (a) the risks faced by class counsel, (b) how the requested fee percentage compares to the market rates and/or rates contained in counsel's retainer agreements with the class representatives, and (c) the length of the litigation and whether class counsel undertook the action on a contingency basis and was required by the litigation to forego other work. *See Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1048–50 (9th Cir. 2002).

31.     Based upon an application of the *Brunzell* factors, a fee of 35% of the settlement fund is reasonable in this case based on the findings and conclusions below.

        a.      <u>The Qualities of Class Counsel</u>: Class Counsel are highly experienced attorneys and have prosecuted many construction-defect and class-action lawsuits in this jurisdiction and elsewhere, including but not limited to (1) *In re Kitec*, a class with more than 32,000 members that resulted in settlements of more than $250 million; (2) the Wirsbo and Viega/Vanguard plumbing-component classes with tens of thousands of members; and (3) *Forsyth v. Humana*, an 84,000-member class action against Humana, Inc. and Humana Insurance that resulted in a settlement of approximately

$28.8 million. KJC was also involved in recent Syngenta matter involving approximately 100,000 U.S. farmers as well as the tobacco, breast implant, pedicle bone screw, and fen-phen litigation, all of which resulted in substantial recoveries.

b.     The Character of the Work and Work Performed: In pursuing this litigation vigorously for the past three years, Class Counsel have protected and advanced the interests of the class, while handling complex issues. Class Counsel filed a successful motion for class certification, performed discovery to prepare the matter for trial, coordinated and conducted hundreds of home inspections and related laboratory testing, filed and responded to dozens of pretrial motions, prepared for jury selection and trial, and ultimately secured a favorable settlement that provides substantial funds for all class members. The quality of opposing counsel is also relevant in determining the skill required to perform the legal service. Here, the Settling Defendant has been defended vigorously by experienced and capable counsel with ample resources.

c.     The Results Achieved: Class Counsel, despite the aggressive defense of the case, obtained a settlement totaling $45,000,000 for the class members. Assuming every Class Member makes a claim on the fund, the settlement will provide approximately $220 per Aspen Series BB unit. The settlement preserves the class members' rights and/or claims against the non-setting entities (e.g., home builders, installers, suppliers), which could yield additional recoveries if pursued by the class members. This excellent result is the clearest reflection of Class Counsel's skill and expertise. As one court explained, absent the efforts of class counsel there would be no funds to distribute to the class members. *See In re Rio,* 1996 WL 780512 at *17; *see also* Manual Complex Lit. § 14.121 (quoting NEWBERG ON CLASS ACTIONS § 14:6, at 547, 550 (4th ed. 2002)) (noting "the factor given the greatest emphasis is the size of the fund created, because 'a common fund is itself the measure of success and represents the benchmark from which a reasonable fee will be awarded'").

32.    The additional *Vizcaino* factors support Class Plaintiffs' fee request. First, the litigation of contingent fee cases is fraught with substantial risks from the start, and those risks often increase as

the case develops. *See In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 942 (9th Cir. 2011). Class Counsel filed this case with no promise of recovery or payment. For the past three years, Class Counsel carried all costs and faced significant financial risk in prosecuting this case on behalf of the class. This class action involved novel issues of law and years of hotly contested litigation. Class Counsel opposed many skilled defense attorneys. Despite the obstacles, Class Counsel secured a favorable recovery for the class members. Second, Class Counsel's requested fee is less than the rate provided for in the contingency fee agreements with the class representatives. The contingency fee rate reflects the market rate for similar services in this jurisdiction. Third, Class Counsel's substantial time invested in this action caused them to forego other work.

33.     The qualities of Class Counsel, the character of the work they performed, and the tremendous results achieved all demonstrate that their "legal responsibility . . . [was] competently discharged, and their work skillfully performed," to the significant benefit of numerous class members. *Brunzell*, 455 P.2d at 34.

34.     After considering the *Brunzell* factors and the additional *Vizcaino* factors, an attorney's fee award of **$15,750,000**—35% of the settlement fund—is fair and reasonable compensation for Class Counsel's work and is consistent with contemporary class-action jurisprudence.

35.     The reasonableness of the attorney's fee award is also demonstrated by the fact that, after providing notice to the estimated 60,000 class members, only two (2) class members provided a written objection related to the requested attorney's fee award. *See McCoy*, 569 F. Supp.2d 448, 476 (D. N.J. 2008) ("lack of significant objections from the Class supports the reasonableness of a substantial fee request"); *In re Rent-Way Sec. Litig.*, 305 F. Supp. 2d 491, 515 (W.D. Pa. 2003).

     *2.     Reimbursement of Litigation Costs.*

36.     "When the class action successfully recovers a fund for the benefit of a class, it is long-settled that the attorneys who created that class recovery are entitled to be reimbursed from the common fund for their reasonable litigation expenses." NEWBERG ON CLASS ACTIONS § 14:2. Courts have

1    acknowledged that such expenses are reasonable and proper and should be reimbursed from a

2    common-fund recovery. *See In re Microstrategy, Inc., Securities Litig.*, 172 F. Supp.2d 778, 791 (E.D.

3    Va. 2001) (awarding 1.27% of a $98.5 million settlement fund for reasonably incurred costs of

4    "computer legal research, document reproduction, secretarial overtime, court reporting, expert

5    witnesses and consultant fees, and travel, meals, and lodging"); *see also Mehling v. New York Life Ins.*

6    *Co.*, 248 F.R.D. 455, 467 & n.21 (E.D. Penn. 2008) (awarding 30% in fees plus 15% in reimbursed

7    costs from a common-fund recovery and noting expenses for travel and meals, transcripts,

8    photocopying, website expenses, legal research fees, courier services, postage, filing and witness fees,

9    overtime, mediation expenses, depositions, express mail, expert witness fees, and all costs associated

10   with class and class-settlement notice, are customarily approved to be distributed from common fund

11   recoveries); *In re Lease Oil Antitrust Litig.*, 186 F.R.D. 403, 448 (S.D. Tex 1999) (awarding costs of

12   more than $7.9 million, or 4.2% of a $164.2 million settlement fund); *In re Nasdaq Market-Makers*

13   *Antitrust Litig.*, 187 F.R.D. 465, 489 (S.D. N.Y. 1998) (approving class counsel's request for full

14   reimbursement of more than $4.4 million in costs from a common settlement fund).

15   37.    Class Counsel is entitled to a reimbursement of the expenses they advanced on behalf of the

16   Class under the common-fund doctrine and based on their fee agreements with the class

17   representatives. Class Counsel has requested **$745,397.36**, approximately 1.7% of the settlement

18   amount, as reimbursement of the costs they incurred in the prosecution of this class action. Based on

19   the nature and size of this class action—a technical construction-defect class action with

20   approximately 60,000 members—and the aggressive defense that lasted until just days before trial,

21   these costs were reasonable, necessary, and connected to prosecuting this litigation.

22   **F.     The Class Representative Service Award is Appropriate and Justified.**

23   38.    Service or incentive awards to the class representatives are fairly typical in class action cases.

24   *See* NEWBERG ON CLASS ACTIONS § 11:38. The awards are intended to compensate class

25   representatives for work done on behalf of the class, to make up for financial or reputational risk

undertaken in bringing the action, and, sometimes, to recognize their willingness to act as private attorneys general. *See Rodriguez v. West Publishing Corp.*, 563 F.3d 948, 958-959 (9th Cir. 2009). "In general, courts have found that $5,000 incentive payments are reasonable." *Hopson v. Hanesbrands, Inc.*, No. 08–CV–0844–EDL, 2009 WL 928133, *10 (N.D. Cal. Apr. 3, 2009) (citing *In re Mego*, 213 F.3d at 463). In deciding whether a service award is warranted, "relevant factors include the actions the plaintiff has taken to protect the interests of the class, the degree to which the class has benefitted from those actions, and the amount of time and effort the plaintiff expended in pursuing the litigation." *Cook v. Niedert*, 142 F.3d 1004, 1016 (7th Cir. 1998).

39.     While not binding on this Court, the Ninth Circuit has instructed the district courts to scrutinize incentive awards so that they do not undermine the adequacy of the class representatives. *Radcliffe v. Experian Info. Solutions, Inc.*, 715 F.3d 1157. 1163 (9th Cir. 2013). The district courts must determine whether there is a "significant disparity between the incentive awards and the payments to the rest of the class members" such that it creates a conflict of interest. *Id.* at 1165. In deciding whether an incentive award is warranted, "relevant factors include the actions the plaintiff has taken to protect the interests of the class, the degree to which the class has benefitted from those actions, and the amount of time and effort the plaintiff expended in pursuing the litigation." *Cook*, 142 F.3d at 1016. The Court finds this guidance helpful in determining the appropriateness of service awards in this action.

40.     Here, while the class representatives support the settlement, the one service award of $10,000 per home is not conditioned on their support and are proportionate to the expected payments to the class members. The service payments sought reflect and are proportionate to the risks and efforts by the class representatives in gathering and communicating information to counsel and acting as the public face of the litigation. The class representatives opened their homes up to inspections, assisted with the investigation and preparation of the lawsuit, and started preparing for trial. The class representatives stayed abreast of the case from the outset and have performed a valuable service to class members in helping to recover $45,000,000 on behalf of the class. Without the class

representatives, the class members would have recovered nothing. A single service award is appropriate in light of the class representatives' time and effort to protect the interests of the class and the substantial benefits they helped achieve. Accordingly, the Court approves a single service award of $10,000 to the class representatives Terence Moniz and Lisa Lee (because the class representatives jointly own one home, the request is for a single $10,000 award).

**G.     The Claims Administrator Will Benefit the Class.**

41.     The Court has previously approved Total Class Solutions, LLC, a Texas Limited Liability Company ("TCS"), to administer numerous class-action settlements, including the dozens of Kitec-related settlements. TCS provides valuable services to the class members by ensuring the settlement funds are paid to all qualifying claimants in a timely and orderly fashion. In this case, TCS's services will include, but are not limited to, mailing final settlement notices and claim forms, processing and evaluating class members' claims, and distributing the settlement funds to the class members. For its services, TCS will be paid approximately $50 per claim plus reasonable per-service fees for subsequent settlement notices and other administration duties. The Court approves setting aside $1,900,000 (providing payment for an estimated 27,500 claims) from the settlement funds to compensate TCS for its claims administration services. TCS shall be paid from the settlement funds as its services are performed.

## II.

## ORDER

Based on the foregoing filings and conclusions, it is hereby  ORDERED, ADJUDGED AND DECREED that:

The settlement and the settlement agreement and release are approved pursuant to NRCP 23(e) as fair, adequate, and reasonable.

1    The Settling Defendant and/or its insurers shall immediately tender all unpaid settlement funds

2    or, if the due date for payment has not yet arrived pursuant to the settlement terms, on or before the

3    due date.

4    All claims of any kind asserted by and between Class Plaintiffs and Aspen are dismissed with

5    prejudice as to the Aspen Series BB units installed in the Class Homes.

6    The Court shall retain jurisdiction over this settlement and the settling parties to enforce the

7    terms of the agreement and oversee the administration of the settlement funds.

8    Class Plaintiffs' request for an award of attorney's fees and costs is GRANTED. Class

9    Plaintiffs are hereby awarded a total of $15,750,000 in attorney's fees and $745,397.36 in reimbursed

10   expenses for a total fee and cost award of $16,495,397.36 to be disbursed to Class Counsel from the

11   settlement funds. Otherwise, the settling parties are to bear their own attorney's fees and costs.

12   Class Plaintiffs' request for one service award of $10,000 to the class representatives Terence

13   Moniz and Lisa Lee (a total of $10,000) is GRANTED. This amount shall be disbursed from the

14   settlement funds.

15   ///

16

17

18

19   ///

20

21

22

23   ///

24

25

17

1    Total Class Solutions, LLC is hereby appointed as the claims administrator for this settlement

2   and shall be compensated for its service consistent with the manner described in the Joint Motion.

3   **IT IS SO ORDERED.**

4    DATED: November _1_, 2017.

5

6                                                    _____
                                                     Judge Timothy C. Williams
7

8   Respectfully submitted by:

9

10  J. Randall Jones, Esq. (#1927)
    Michael J. Gayan, Esq. (#11135)
11  KEMP, JONES & COULTHARD, LLP
    3800 Howard Hughes Parkway, 17th Floor
12  Las Vegas, Nevada 89169
    *Class Counsel*

13

14

15

16

17

18

19

20

21

22

23

24

25

                                         18